Mr. Justice VanValkenburgh
delivered’the opinion of the court
The plaintiff in error was indicted, tried and convicted of murder at the Circuit Court of the Sixth Circuit held in Hillsborough cotmty, at the Fall Term, 1878. Among other things, the court charged the jury as follows: “It ia true that when the killing of a human being by another is proved, the law raises thehe same is rebutted by the evidence on the part of the State.55 Aga presumption of malice, and the killing being established, it is incumbent upon the defendant to rebut such presumption, unless tin the court charged, “malice is implied by law, by any deliberate, cruel act committed by one person against another, no difference how sudden. Thus when a man kills another suddenly without any, or without a* considerable provocation, the law implies malice.55
The counsel for the prisoner asked the. court to instruct the jury,
First. That the proof of the mere fact of the killing is not sufficient for them to presume malice, but that all presumptions are in favor of the innocence of the accused, and that the animus with which the killing was committed must be inferred from the conduct of the accused, and other circumstances of the case.
Second. That in arriving at the conclusion as to the animus of the accused, they inay take into consideration threats made by the deceased against the life of the accused a short time before the Idling, although it be proven that those threats had been communicated to the accused.
The court' refused to charge the jury as contained in the first request of the defendant’s counsel, but did instruct the jury as requested by the defendant in the second request so made by him. After such charge the jury retired ,to consider of their verdict, taking with them, by consent of the State’s attorney and the prisoner’s counsel, the charge of the court. Soon thereafter the court recalled the jury, and’ in their presence struck out a portion of the charge which defendant’s counsel had excepted’to, to-wit: the following words:
“It is true that when the killing of a human being by •another is proven, the law raises the presumption of malice, and the killing being established, it is incumbent upon the defendant to rebut such presumptiop, unless the same is rebutted by the evidence on the part of the State.” In lieu of the part of the charge so stricken, the court gave the following instruction, to-wit: “The within instructions asked by the defendant given.” (Those being the instructions requested by the defendant and hereinbefore set out.) “The first instruction with this qualification: The jury' being the-judges of all the facts and circumstances in the case, they are to say whether or not the alleged killing was • done maliciously under the charge of the court as to how! malice expressed or implied by law is proven.”
When the jury was recalled, and after the portion of the charge excepted to had been thus stricken out, and after the instructions-’ asked for by the defehdant’s counsel had thus been given, the said counsel were inquired of if they had any objections to make to these alterations and replied that they had not, ’and no exception was taken.
After verdict, defendant’s counsel moved that the judg- ' ment be arrested, that the verdict be set aside and a new trial granted, for reasons as follows:
1st. That the courf erred in instructing the jury that when the killing’of a human being by another is proven the law raises the presumption ’of malice, and the killing being established, it is’incumbent upon the ’defendant to rebut such presumption, unless the same is rebutted by the evidence on the part of the State.
2. The court erred in instructing the juiy' that malice is implied by law by any deliberate cruel act, committed by one person against another, no difference how sudden. Thus when a man kills another suddenly, without any or without a considerable-provocation,'the law implies malice.
3d. ‘The court erred in instructing the jury that when it' is proven that one person threatens the life of another person, such other person should not seek the one making such threats and kill him.
4th. The. court erred in refusing to give the first instrue *59 tion asked for by defendant’s counsel before the charge of the court was submitted to the jury.
5th. The court erred in afterward giving said instruction with a qualification.
6th. The court erred in submitting the charge to the jury without explaining to them that a portion of it was intended to be stricken out.
7th. The verdict is contrary to law.
8th. The verdict is contrary to the evidence.
9th. The jury failed to give the benefit of every reasonable doubt.
10th. The jury discussed the evidence in the case before the same was closed on the part of the defendant and the case submitted to them for their consideration.
. 11th. The jurors were allowed by the bailiff to visit a public eating-house, kept by one Walter S. Cathcart, and. while there they were allowed to separate.
12th. The jurors were allowed to visit a public eating-house kept by one Robert Canning, and there to mingle with persons not on the jury.
Upon hearing the motion upon the last two points made by the defendant’s counsel, the judge certifies in the record that “the State attorney read affidavits of the jurors in this case. The petit jurors in this cause were called and sworn upon their voire dire and questioned by the court,” and the following order was made:
“After a searching investigation as to the conduct of the jury in this case, the court is satisfied that the jury, in arriving at the conclusion they have, were not in the least influenced by outside pressure in any manner whatever, and after considering the other grounds for a new trial, the motion is overruled.”
The case is here on writ of erroT, and the first error alleged is that “the court erred in charging the jury fit is true that when the killing of a human being by another is proven the law raises the presumption of malice, and the killing being established, it is incumbent upon the defendant to rebut such presumption, unless the same is rebutted by the evidence on the part of the State.’ ” The record shows that this portion of the charge, which had been excepted to by the defendant’s counsel, was subsequently withdrawn and stricken out by the court before the jury had rendered their verdict, and that in place of it was substituted other instructions, principally suggested by the counsel for defendant. To this striking out and substitution there was no excep-' tion taken. The cause of the first exception having been thus withdrawn in time, the’ exception falls with it and is not now available.
The second error alleged is in “refusing the first instruct tion asked for by the prisoner’s counsel, as follows: ‘The-proof of the mere fact of the killing is not sufficient to raise the presumption, of malice, but that all presumptions •are in favor of the innocence of the accused, and that the animus with which the killing was committed must be inferred from the conduct of the accused and other circumstances of the case.’ ”
This charge was given by -the court, as asked by defendant’s counsel, before the jury had agreed upon their verdict. It having been so given, the exception taken in the first instance to the court’s refusal then to so instruct fails to be of further use. It is true that in addition to the language used by defendant’s counsel in his request the court added these words: “The jury being the judges of all the facts and circumstances in the case, they are to say whether or not the alleged killing was done maliciously under the-charge of the court as to how malice expressed or implied by law is proven.” "We cannot see that there is any impropriety in this instruction. This court has held in Nickels & Gautier vs. Mooring, (16 Fla., 76,) that it is not necessary for the court to use the exact language of the counsel in their request to charge the jury, neither is it necessa ry to be confined to the very instruction asked. The legal. propositions should be presented clearly and to the point. But beyond this no exception was taken to this addition to the instructions so requested to be given at the time, and it is too late, even if an exception would have been available, to take it after trial and verdict. (Coker & Schaffer vs. Hayes, 16 Fla., 468; Story & Sullivan vs. State, Ibid., 564.)
The third ground of error is that the “court erred in permitting the jury to take the original charge to their room with them, and then after they had deliberated thereof to recall them, and to strike from his charge that which had been excepted to by defendant,” as in his first assignment of error, and giving to them the instruction asked for- by defendant, as in his second assignment of. error, together with the addition thereto, before referred to.
It is no error to permit the jury to take with them to their consultation room the charge of the court. In Dixon vs. The State, 13 Fla., 636, this court said: “The charge of the court is by law a part of the record. It is required that the Judge deliver it to the jury as it is written. If it is desired by the jury, it is difficult to perceive any good reason why they may not take to their room the. writing itself.. Indeed, they may thus better understand it and avoid confusion in their deliberations.” There can be no greater reason assigned for prohibiting them from taking an amended charge, if properly amended, than from prohibiting them from taking the original charge.
The fourth assignment of error is, “that the court erred after he had charged the jury and they had retired to deliberate of their verdict, to recall them on his own motion, and then striké out a part of his charge before given, and further upon his own motion to give them an additional charge.” Bishop, in his Criminal Procedure, Section 1,000, says the retiring of a jury to deliberate on their verdict does not necessarily cut off all communication between them and the judge. If, however, the judge has occasion to make a communication to them, he should send his officer for them, and the communication should take place in open court. (3 Am. C. Law, §3,139; Sargent vs. Roberts, 1 Pick., 341; Jones vs. Van Patten, 3 Ind., 107; Hall vs. The State, 8 Ind., 439.)
The judge having thén the undoubted right to communicate with the jury in open court, was there error in withdrawing a portion of his written charge and substituting in lieu thereof other instructions? We cannot see that there was. The jury had. not agreed upon their verdict, they were then consulting upon the case presented to them, the charge of the court was before them; and the court having upon consideration concluded that a portion of that charge was erroneous, recalled them, and corrected so much of it as he deemed necessary. It frequently occurs that juries come into court and ask for further instructions upon some particular point which arises in their investigations. The defendant sustained no injury, for those portions of the charge stricken out had been excepted to by hia counsel, and those instructions given had been principally suggested, ’by him. In the case of Hall vs. The State, 8 Ind., 439, above referred to, the court in their opinion say: “The right of the court to communicate with the jury during, their deliberations upon a cause,- to withdraw from their ¡consideration erroneous instructions, and to give additional ones, &c., is undoubted.” But all this was done, as appears by the bill of exceptions, with the- consent of the defendant’s counsel and no objection made or exception taken.
The fifth assignment of error is that “the court erred in not sealing his last charge to the jury.”
The statute, Chapter 2096, approved March 2nd, 1877, provides that in such cases the charge shall.-be signed and *60 sealed by the judge, be filed and form a part of the record in the case. The original charge was so signed and sealed; the subsequent amendment of such charge was signed but did not have the seal attached to it. We consider it as simply an amendment by striking out one portion and inserting in lieu thereof "other instructions. It is a substantial compliance with the statute, and no objection was made or exception taken to it in the court below. '.The amendment became a part of the original charge, which was signed and sealed by the judge.
The sixth assignment is that the court erred in instructing. the jury, “that malice is implied by law by any deliberate, cruel act, committed by one person against another, no difference how sudden. Thus, when a man kills another suddenly without any, or without considerable provocation, the law implies malice.” Any “deliberate, cruel act” must imply malice. The word itself means a consideration of the act, “well advised’ or considered,” thought of and weighed in the mind. Taken with the other portions of the charge bearing upon this subject of malice, we cannot see that it could by any'possibility mislead the jury..
The seventh assignment of error was* abandoned by the defendant's counsel on the argument.
The eighth assignment is that the court erred in not granting a new trial.
The evidence was conflicting, the jury.were the judges of the credibility of the witnesses, and they have passed upon the case. . The . only questions, therefore, not considered thus far, are those raised by the 11th and 12th' points made by defendant's counsel on this motion'for a new trial. The record discloses the facts that on the argument of the motion for a new trial, affidavits were read and.considered by the court respecting the allegations made in the 11th and 12th points referred to. Not only that, but without objection from either side, the “petit jurors in this cause -were called and sworn upon their voire dire, and questioned by the court.” The court being upon such “searching investigation” satisfied that the jurors “were not in the least influenced by outside pressure in .any manner whatever,” overruled the, motion.
Aside from this, the evidence in -the record does not establish definitely a .eparation of the jury. It appears that they visted the saloon of one Cathcart for the purpose of getting refreshments, under the charge of the bailiff; that while there three of the jurors stepped through a door into the cook room, that no person was present in the cook room except the cook and the witness, the bailiff standing at the door in full view of the jurors; that no-communication of any kind was held by Cathcart with either of the jurors. The- bailiff, Daniel Levingston testified, that the body of the jury, during the time they were so at the restaurant, were kept by him together and did not separate, except that three of them were for a few minutes in the cook room, separated from the body by a screen door, that while they were in the cook room he was at the screen door where he could see the jurors. This is not such a separation of the jury as will render their verdict invalid. (Bishop on Criminal Procedure, §999, and cases cited.)
We can see no reason for reversing the judgment of the court below on this ground.
The judgment is affirmed.