BENJAMIN BIRD, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. An indictment for murder, otherwise good in form, charging that the prisoner "feloniously, wilfully and of his malice aforethought, with a premeditated design to effect the death of," &c., is a good indictment under our statute.

2. An indictment for murder which charges the crime according to the common law form is sufficient to sustain a verdict for murder without the use of the words, "from a premeditated design."

3. Where it is shown to the satisfaction of the court that there was no misconduct upon the part of the jurors, and it is so certified by the court in the bill of exceptions, the mere separation of the jury is not a sufficient ground for a new trial, especially is this so when the evidence upon that question produced before the court is not brought up in the bill of exceptions.

Writ of Error to the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*T. A. McDonell* for Plaintiff in Error.

*The Attorney-General* for The State.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court.

At the Spring Term, 1880, of the Circuit Court, held in

and for Duval county, Benjamin Bird, with others, was indicted for the murder of one Joseph Nelson. On the trial of the cause in December of the same year a severance was had, and Bird was tried, found guilty and sentenced to death.

After the verdict of the jury the counsel for the defendant moved in arrest of judgment, and also for a new trial, upon the following grounds:

1st. The indictment does not charge the statutory offence of murder in the first degree with that exactness which the rule of law requires, but is defective and uncertain in this, the said indictment avers that the said offence and murder was committed by the said Benjamin Bird *with* a premeditated design to effect the death of the said Joseph Nelson; whereas, the statute declaring what murder in the first degree is, defines it to be *from* a premeditated design; the said indictment wholly failing to use or employ or charge the words of the statute or language of a similar import and significance.

2d. That the jury that tried said prosecution, after all the testimony was in on the part of the prosecution and defence, and before verdict rendered, without permission of the court, but against its direct order, during the night separated, and a part of said jury then and there went into the drinking saloon of one John B. Togni, and then and there drank intoxicating liquors, to what extent this mover knoweth not.

3d. The verdict is contrary to the charge of the court.

4th. That the verdict is not sustained by the evidence.

These motions in arrest of judgment and for a new trial having been heard and considered by the court were overruled and denied. The counsel for the defendant excepted to such ruling of the court, procured his bill of exceptions to be signed and sealed, and brings the case here on writ of

error. The errors assigned in this court are the first, second and fourth grounds urged in the foregoing motions in arrest of judgment and for a new trial. The bill of exceptions does not contain the charge of the court to the jury, no exceptions thereto appearing to have been taken.

. The first error assigned, viz : that the indictment is defective for the reason that it avers that the offence was committed *with* a premeditated design rather than *from* a premeditated design, is practically abandoned by the plaintiff in error. The only reference to it in the brief and argument of his counsel is in the following words : " The assignment of errors here discloses the reasons for bringing this cause to the Supreme Court, two of which, the second and third, will be here argued. The first is respectfully submitted without argument." Southern Express Co. vs. VanMeter, 17 Fla., 796.

As this, however, is a case involving the life of a person, we will consider the alleged error as not abandoned.

The indictment charges that the defendants, " not having the fear of God before their eyes, but being moved and seduced by the instigations of the devil, on the twenty-fifth day of June, in the year of our Lord one thousand eight hundred and eighty, with force and arms, at the said county of Duval, State of Florida, in and upon one Joseph Nelson, in the peace of God, then and there being, feloniously, wilfully and of their malice aforethought, with a premeditated design to effect the death of the said Joseph Nelson, in the peace of the State of Florida, then and there being, did make an assault; and that the said Benjamin Bird, a certain pistol, of the value of ten dollars, then and there loaded and charged with gun-powder and one leaden bullet, then and there feloniously, wilfully and of his malice aforethought, with a premeditated design to effect the death of the said Joseph Nelson, did discharge and shoot

off against and upon the said Joseph; and that the said Benjamin Bird, with the leaden bullet aforesaid, out of the pistol aforesaid, then and there by the force of the gunpowder aforesaid, by the same Benjamin Bird discharged and shot off as aforesaid, then and there wilfully, feloniously and of his malice aforethought, with a premeditated design to effect the death of the said Joseph Nelson," &c.

The statutes of our State, Chap. 1637, sub-Chap. 111, Secs. 1 and 2, provide that the killing of a human being, without the authority of law, by poison, shooting, stabbing or any other means, or in any other manner, when perpetrated from a premeditated design to effect the death of the person killed, or of any human being, shall be murder in the first degree.

Murder is described by Sir Edward Coke as " when a person of sound memory and discretion unlawfully killeth any reasonable creature in being and under the King's peace, with malice aforethought, either express or implied." " Malice aforethought," as defined by Mr. Bishop in his work on Criminal Law, is a technical phrase employed in indictments, and with the word " murder " distinguishes the felonious killing called murder from what is called manslaughter. At common law the indictment in this case was good, the offence having been alleged to have been committed " feloniously, wilfully and of his malice aforethought." The statute does not change the common law in this respect; it simply fixes the grade of the offence and permits, in certain cases, the jury to find the defendant guilty of a less offence than that of murder. Under our statute an indictment for murder which charges the crime according to the common law form would be good for the reason that the allegations in such indictment would cover all the grades of that crime enumerated in the statute. The State vs. Thompson, 12 Nevada, 140; The State vs.

Crozier, 12 Nevada, 300; The People vs. White, 22 Wend., 175; McAdams vs. The State, 25 Ark., 405; The People vs. Cronin, 34 Cal., 191; Green vs. The Commonwealth, 12 Allen, 170. In the case of White vs. The Commonwealth, 6 Binney's R., 182, the court say: " In the case of the Commonwealth vs. Joyce and Mathias, who were convicted of the murder of Sarah Cross, it was moved in arrest of judgment because the indictment did not charge the murder to have been committed by a *wilful, deliberate and premeditated killing, as expressed in the act of Assembly.* But the motion was overruled and the murderers executed."

The second error assigned is, that the jury, after the testimony was in, in the night, and in opposition to the order of the court, separated and some of them went into a drinking saloon and took intoxicating liquors. The bill of exceptions recites the facts in regard to such separation as follows: " It appearing to the court by evidence taken that on the night before the conclusion of the said cause two of said jurors crossed the street to said saloon, and that one of them drank one glass of ale, and that both of said jurors immediately returned to the jury room, and that no one approached them to influence them against defendant; that the said court did consider and decide that the said motion should not be granted." Here is the judgment of the court determining the question raised by this assignment of error. There seems to have been evidence introduced upon the question of the separation, an examination had by the court, and a deliberate decision made. None of that evidence is embodied in the bill of exceptions, and the record is entirely silent upon the question, except as it is referred to in the foregoing extract. To have enabled this court to determine whether the ruling of the court below in this respect was correct, and in the exercise of a sound

discretion, the evidence should have been been included in the bill of exceptions.

In the case of The State of Florida vs. Madoil, 12 Fla., 151, this court says: "In this case the record shows that the Judge, who presided on the trial, when it was made known to him that the jury had separated, instituted a strict inquiry into their conduct, and was satisfied from the proofs that there had been no misbehavior on the part of the jury, as indeed none had been charged." This is the precise case before us. The Judge has certified by over-ruling the motion that there had been no misbehavior on the part of the jury.

In the case of The People vs. Ransom, 7 Wendell, 417, after citing several cases bearing upon this subject of sepa-ration and misconduct of the jury, the court says: " The conclusion from these cases appears to me to be this: That any mere informality or mistake of an officer in drawing a jury, or any irregularity or misconduct in the jurors them-selves, will not be a sufficient ground for setting aside a verdict, either in a criminal or civil case, when the court are satisfied that the party complaining has not, or could not have sustained any injury from it." This seems to be the rule in most of the States of this Union, except per-haps that in some States it is held that the burden of satis-fying the court that the prisoner has sustained no injury from the separation is on the State and not the prisoner. This last question, however, is not in this case, and we do not attempt here to decide it. O'Conner vs. The State, 9 Fla., 241-5; Coleman vs. The State, 17 Fla., 206; The State vs. Harris, 12 Nevada, 414; Pratt vs. The State, 56 Ind., 179; Roberts, et al., vs. The State, 14 Ga., 8; The State vs. O'Brien, 7 R. I., 336; The State vs. Conway, 23 Minn., 291; The State vs. Prescott, 7 N. H., 287; The State vs. Igo, 21 Miss., 459; Stanton vs. The State, 13 Ark., 317; Bishop Crim. Procedure, §999, and laws cited.

As to the fourth error assigned, that the verdict is not sustained by the evidence, the substance of the evidence is only given in the bill of exceptions, and is in the following language: "Thereupon the said State to maintain the issue produced a number of competent witnesses, and did then and there prove and establish the following facts: That the hands on Clark's mill, in the city of Jacksonville, in the said city, county and State, including the defendant, Benjamin Bird, ceased and discontinued to work on said mill, and threatened and did attempt to prevent other employees from working at said mill; that a week before, and on the day of said homicide, they had assembled in great numbers with arms of various kinds, including fire-arms, in the vicinity of said mill, and in the said city, with the avowed purpose of making the mill hands then at work on said mill discontinue working; that on the 25th day of June, A. D. 1880, the said defendant with many others were engaged in riot and tumult then and there; that the police officers of said city, of whom the deceased, Joseph Nelson, was one, tried in every legal manner to suppress said riot and tumult; that the people of said city were in great apprehension of disastrous consequences from said rioters; that the defendant, Benjamin Bird, who was one of said rioters, and seemed to be the leader, was on the opposite side of the street from Nelson, the deceased, about fifty or sixty feet; that the said Nelson, who was being pressed by the said rioters in his efforts to perform his duty, fired a pistol shot in the air. A moment after the said shot was fired the defendant had crossed the street, and inquired who fired that shot. One Joe Williams standing near Nelson, and who was one of the active participants in said riot, replied, pointing to Nelson: 'That white-faced son of a bitch, Joe Nelson;' that defendant instantly aimed, and covered Joe Nelson with a

pistol and fired, wounding him, the said Nelson in the right side; that Nelson immediately dropped his pistol, and staggered and put his hand to the wound, and said: 'I am shot,' and was then taken off; from which wound Nelson in a few days died; that Bird, after shooting Nelson, then and there escaped, and was captured a day or two after, and the riot was then and there, after shooting of Nelson, suppressed." Such is the statement of all the facts and the evidence as given to us in the bill of exceptions. The jury by their verdict have found from the evidence before them that Bird " feloniously, wilfully and of his malice aforethought" committed murder. We are not disposed, after a careful examination of the slight testimony above recited, to doubt the propriety of such verdict, and must affirm the judgment of the court below.