Gamble v. The State of Florida—Syllabus.

DAVID GAMBLE, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

## CRIMINAL LAW—SEPARATION OF JURY—USE OF INTOXICANTS BY JURY.

1. The mere separation of jurors, empanelled to try a capital case, from their fellows, without the attendance of an officer, although an irregularity, is not a sufficient cause for setting aside the verdict, if the court is satisfied that the prisoner has not sustained any injury from such separation. But where there has been an improper separation during such trial, if the verdict is against the prisoner, he is entitled to the benefit of a presumption that the irregularity has been prejudicial to him, and the burden of proof is upon the prosecution to show to the entire satisfaction of the court that the prisoner has suffered no injury by reason of the separation (contrary dicta in State v. Madoil, 12 Fla. 151, disapproved).

2. If intoxicants be shown to have been used by the jury empanelled in a capital case, the presumption arises in favor of the convicted defendant that it resulted injuriously to him, and the burden is on the State to show affirmatively to the entire satisfaction of the court, that its use was to such a limited and moderate extent as to completely and satisfactorily negative any harm to the defendant from its use by the jury or any member of it.

Writ of error to the Circuit Court for Dade County.

The facts in the case are stated in the opinion of the court.

B. A. Thrasher, for Plaintiff in Error.

William B. Lamar, Attorney-General, for the State.

TAYLOR, C. J.

The plaintiff in error, David Gamble, was indicted, tried, convicted and sentenced for the crime of murder in the first degree at the Spring term, 1902, of the Circuit Court for Dade County, and comes here by writ of error.

The only question presented here is the propriety of the denial of the defendant's motion for new trial upon the fifth and sixth grounds thereof, as follows: "5th. Because the jury that was empanelled to try, and did try, this case were not during said trial and consideration of this case so guarded or protected as the law requires, either by the sheriff or bailiff as to prevent said jury or protect them from improper communications or instructions."

"6th. That the said jury were allowed during the trial of the case to separate and absent themselves from the presence of each other and from the presence of the bailiff, and individual members of the jury were allowed to talk and converse with other persons who were not members of the jury, said person or juror so conversing not being at the time in the presence of the members of the jury or in the presence of the bailiff, sheriff or other officer; that the place where said jury ate and slept during the time of the trial and consideration of this case was at the hotel known as the 'Everglade,' one of the leading hotels of the city of Miami, Dade county, and located several blocks from the court house; that much of the time was spent at and about said hotel, during which time various members of the jury would separate or absent themselves from the jury as a body, some being in the porch of the hotel, some in the hall, some in the toilet room and some in the yard, during which time the said several members

of the jury, or those who desired, could, and some  did, converse with persons not members of the jury; that said jury at night occupied different rooms in said hotel, to-wit: three rooms, there being four jurymen to each room."

In the case of State v. Madoil, 12 Fla. 151, which was a trial for larceny, it is said: "In trials for  offences punished capitally, where one or more of the jury sepa-rate from their fellows, we think it should be shown that the separation was from urgent necessity, and that no op-portunity was offered for any improper or undue influence. In such cases the conduct of the absent juror should be subjected to the most rigid scrutiny, in order to ascertain if it was blameless while separated from his fellows, and the verdict should only be allowed to stand  when  the prosecution can show that there was no opportunity to tamper with the juror, or to influence him in finding his verdict."   This rule, we think, indulges too strong a pre-sumption against the integrity of the jurors, and is too favorable to the accused in such cases, as it makes the in-tegrity of the verdict dependent solely upon the existence of an opportunity for an improper  tampering  with  a juror, whether such opportunity was utilized or not  by any one in any manner.   Besides this, what was said in that case as to the rule governing the separation of ju-rors in capital cases was *obiter dicta,* as the court was not dealing with a capital case, but one of larceny  only.

In the case of Bird v. State, 18 Fla. 493, it is said that "where it is shown to the satisfaction of the court that there was no misconduct upon the part of the jurors, and it is so certified by the court in the bill of exceptions, the mere separation of the jury is not a sufficient ground for a new trial."   The Bird case was one for murder, and it recognizes the propriety of the rule that even though there

may be an opportunity for the exertion of improper in-
fluences upon the jurors, that yet the bare fact of such
opportunity without resultant harm to the accused  is
not enough to avoid the verdict.  The correct rule, as we
think, deducible from these and other cases, is that the
mere separation of jurors empanelled to  try a  capital
case, from their fellows, without the attendance of an
officer, although an irregularity is not a sufficient  cause
for setting aside the verdict, if the court is satisfied that
the prisoner has not sustained any  injury  from  such
separation.  But where there has been an improper sep-
aration during such trial, if the verdict is  against  the
prisoner, he is entitled to the benefit of a presumption
that the irregularity has been prejudicial to him,  and
the burden of proof is upon the prosecution, to show to
the entire satisfaction of the court that the prisoner has
suffered no injury by reason of the separation.  See State
v. Cucuel, 31 N. J. L. 249.

The facts, in brief, disclosed by the examination of the
jurors, bailiff, sheriff and others in this case are in sub-
stance as follows:  The jury in charge of a bailiff took
their meals and slept at a hotel in the  town of  Miami,
where the trial was had.  They occupied three adjoining
rooms on the upper floor of said hotel, and were the sole
occupants of that floor, the bailiff in charge staying there
with them.  In passing  to and fro  between the court
room and hotel they did not keep compactly together, but
straggled somewhat, and such straggling also occurred
while they were about the hotel, but on such occasions
they were all in view of the bailiff.  At the hotel some of
them would loiter in the halls, and on one or two occasions
while so loitering would speak a few  words  to  some
girls who were staying there.  When they would  come

into the hotel from the court house they would all repair to a small wash room of the hotel, too small to accommodate them all at once, and as one batch of them would get through bathing they would step outside and wait just outside the door under a tree until the others got through; the bailiff the while having all of them practically in his view. On one occasion one of the jurors got up from the dining table during meal time and went upstairs alone to their rooms for the purpose of getting his handkerchief and remained away several minutes. The bailiff went after him, leaving the rest of the jury unattended at the dining table, but met him on the stairs and returned immediately with him to the rest of the jury in the dining room. On one occasion at a late hour in the night one of the jurors being sick, the bailiff and another juror got up and went out of the hotel and into the town with him and saw a doctor, and from the doctor went to a drug store and immediately back to their rooms at the hotel, the rest of the jury being left meantime unattended and unconfined in their rooms at the hotel. On another occasion while the jury in a body were walking past the barber shop of one of their number they stopped while the owner of the shop went in and gave some business directions to his assistants in charge of the shop. The jury were also taken in a body to the postoffice to get their mail, but none of them received any letters or other communications that had anything to do with the case. On one occasion an outside party was permitted by the bailiff, after exhibiting two telegrams to the bailiff, to show them to one of the jurors in the presence of the others. These telegrams were entirely foreign to the case on trial and were from commission firms in two distant cities in other

28 S C

States relative exclusively to the sale and shipment of tomatoes for the juror to whom the telegrams were shown.

While the motion for new trial was not based upon the use of intoxicants by the jury during the trial, yet it appeared from their examination that they procured and had in their rooms at the hotel ten or a dozen bottles of lager beer, a pint and half pint flasks of whiskey and a regular bottle of whiskey during the time of the trial. The proofs showed that of this they drank very sparingly and moderately, none of them being at any time the slightest bit intoxicated from its use—half of the full bottle of whiskey being left unconsumed at the close of the trial. This liquor, it appears, was procured at the expense of the jurors themselves, they contributing money for its purchase. While these irregularities and separations on the part of the jury were shown by their own statements to have occurred, yet we think that it was also affirmatively and satisfactorily shown that nothing occurred from it to influence the verdict, and that no harm resulted therefrom to the defendant. It was affirmatively shown that in all the separations of the jury no communication in reference to the case was had between them and any outside party, and that none of them heard anything tending to influence their verdict; that none of them conversed with anyone in reference to the case, neither was anything said with reference to it in their hearing, and none of them received any communications from outside in reference to the case. The use of intoxicants by the jury was also affirmatively and satisfactorily shown to have been to such a limited and moderate extent as to leave no room for any supposition that harm resulted therefrom to the defendant. As to the use of intoxicating liquors by juries in capital trials, practically the same rule applies that

appertains to separations by the jury in such cases. If intoxicants be shown to have been used by the jury, the presumption arises in favor of the convicted defendant that it resulted injuriously to him, and the burden is on the State to show affirmatively, to the entire satisfaction of the court, that its use was to such a limited and moderate extent as to completely and satisfactorily negative any harm to the defendant from its use by the jury or any member of it. Jones v. People, 6 Colo. 452; Jones v. State, 68 Ga. 760. The conduct of both the bailiff in charge of the jury in this case and of the jurors themselves was highly irregular and unbecoming the proper and decorous conduct of the trial of a citizen for his life, for all of which misconduct on the part of the bailiff and the jurors they should, at least, have been severely reprimanded by the court, if not more severely dealt with, but, in consequence with the rule of law above announced, it having been affirmatively and satisfactorily shown, as we think, that no harm resulted to the defendant from such irregularities and misconduct on the part of the jury and the bailiff in charge, we can not disturb the verdict found. This disposes of the only question presented either by the record or in the briefs of counsel, and finding no reversible error, the judgment of the court below is hereby affirmed.