SALTER, J.
Marisol Alonso appeals an order denying a motion for new trial based on alleged misconduct by certain jurors. Ms. Alonso is the personal representative for the estate of Kristine Fernandez, original plaintiff in a severe (and ultimately fatal) motor vehicle collision and rollover case. After a three-week trial, the jury returned a verdict in favor of appellee Ford. We affirm the denial of the motion for new trial.
The issues raised by the appellant are (1) an allegation of premature deliberations by certain members of the jury, (2) an allegation that one member, Juror S.,[1] *564 suffered a “high blood pressure headache” and “went along with a defense verdict in this case only because he was fearful of having a stress-induced stroke caused by his severe hypertension,” and (3) an allegation by Juror S. that another juror, Juror K, “smelled like a batch of beer,” and seemed to Juror S. to have been intoxicated at one or more points during the trial. Of these, only the third issue merits extended analysis as a basis for the motion denied by the trial court.[2]
An allegation of juror intoxication, of course, cuts to the very heart of our nationally-revered right to trial by jury. “An excessive use of liquor by a juror during the trial is such misconduct as will vitiate the verdict.” Goldring v. Escapa, 338 So.2d 871, 873 (Fla. 3d DCA 1976) (citing 58 Am.Jur.2d New Trial § 81 (1971)), cert. denied, 346 So.2d 1248 (Fla.1977).
In the case at hand, the allegation was considered diligently by the trial court. The court initially allowed Juror S. to address the court, with counsel present, in a sworn narrative. Unsurprisingly, much of that narrative involved subjective impressions and hearsay comments purportedly made by other jurors. The narrative did not include any claim that Juror K. had actually been seen imbibing any alcoholic beverage or that he had admitted drinking any such beverage while court was in session (including any break taken in the course of any particular day’s proceedings). Nevertheless, upon motion by the appellant and further briefing by both sides, the trial court permitted a further interview of another juror, Juror R.[3] Juror R. testified that K. “smelled of liquor” on two occasions, but that he did not appear intoxicated. R. recounted a conversation with another juror in which that juror told R. that K. smelled of liquor and “looked like he was hung over or something to that effect.” R. said that K. looked like “he had quite a few drinks the night before or something.” But R. also testified that he never saw K. drinking or fall asleep during the trial, and that K. never indicated that he was “not listening to or considering the evidence at the trial.”

Analysis

We review an order denying new trial under the abuse of discretion standard. Southwin, Inc. v. Verde, 806 So.2d *565 586, 587 (Fla. 3d DCA 2002). We afford great deference to the trial court’s superi- or vantage point in assessing the credibility of those who testified in the post-verdict inquiry.
The appellant argues that:
“[i]f intoxicants be shown to have been used by the jury, the presumption arises in favor of the [verdict loser] that it resulted injuriously to him, and the burden is on the [verdict winner] to show affirmatively, to the entire satisfaction of the court, that its use was to such a limited and moderate extent as to completely and satisfactorily negative any harm to the defendant from its use by the jury or any member of it.”
Gamble v. State, 44 Fla. 429, 33 So. 471, 473 (1902) (citations omitted).[4]
In this case, the evidence considered by the trial court included evidence that Juror K. was employed as an accountant; that the bailiff did not see impairment in his behavior as K. entered and exited the courtroom; that K. described in detail to other jurors his calculations regarding the impact of the two vehicles involved in the rollover accident; and that Juror S. was angry that the other jurors had not agreed with his position in favor of the plaintiff earlier in deliberations. In his initial narrative, S. described a confrontation when Juror K. “got up to me, and came into my face” in the jury room. “If I were on the street, I would have beat the living daylights out of him,” Juror S. told the court. Later in S.’s narrative, he described asking himself during the jury’s deliberation, “what do I do here? Go for a hung jury, and put up with these cretins, or what? Or do I just cave in and go with them?” Nonetheless, Juror S. ultimately agreed with the other jurors and confirmed his agreement again in open court when all jurors were polled after the verdict was announced.
Other cases involving incidents or allegations of juror intoxication involve much less ambiguous incidents. In Goldring, a juror appeared intoxicated during the fourth day of trial “by having alcohol on his breath, making grimacing motions, waving his hands and attempting to engage in conversation with the other jurors about the case during the reception of issues which disturbed the jurors.” 338 So.2d at 873. Because these signs were obvious, the defendants moved for a mistrial. The motion was denied, and “the judge simply removed the troublesome juror and put an alternate juror in his place.” Id.
In Langston v. State, 212 So.2d 51 (Fla. 1st DCA 1968), there was evidence that the jury foreman in a murder case in Wakulla County bought whiskey “which he took to the motel where the jury spent the night during the trial and that the jury consumed the whiskey and had a good time doing so.” Id. at 52. The convicted defendant raised this as one of three *566 points on appeal and cited Gamble, to support his argument. The district court reversed and ordered a new trial, but without further or particular reference to the jurors’ consumption of alcohol at night. Rather, the court determined that the collective result of all three points on appeal and the entire record was the denial of the defendant’s right to a fair trial.
Both parties also briefed this Court’s decision in Baez v. State, 699 So.2d 305 (Fla. 3d DCA 1997). In that case, a jury-in a Monroe County D.U.I. trial sent out a note to the trial judge during deliberations: “One of the jurors has admitted to having a couple of beers at lunch. Is he qualified to help make a decision?” The trial judge did not interview the accused juror or any other jury member, but instead declared the accused juror incompetent to proceed. The defendant refused to stipulate to a five person jury, and the trial judge declared a mistrial. This Court concluded that a mistrial should not have been ordered because, “without any inquiry into the precise condition of the allegedly impaired juror, there could be no showing that he was not competent to deliberate with the consequence that he need not have been excused at all.” Id. at 306 (citing Gamble, Langston, and Goldring).
In the present case, none of the other jurors or any other witness saw Juror K. consume an alcoholic beverage, whether at lunch or at any other point in the trial, and counsel for the appellant did not accept opposing counsel’s suggestion for an interview of K. There was also no demonstration that Juror K.’s conduct during the trial actually influenced the verdict rendered by the jury.

Conclusion

When Juror S.’s allegations were brought to the trial court’s attention, the trial court allowed a careful and conscientious inquiry into the facts, balancing the appellant’s right to have her case considered by unimpaired jurors against the jurors’ rights to deliberate in privacy and without subsequent second-guessing. The trial judge did not abuse her discretion in denying the appellant’s motion for a new trial.
Affirmed.

. Because of the nature of the allegations and the publication of this opinion (including dissemination through searchable electronic me *564 dia), the names of the jurors are not used here.

. As to the first point, the allegations of premature deliberations were thin on specifics and long on Juror S.’s subjective belief at the outset of deliberations that the other five members of the jury had already made up their minds. In actuality, the jury deliberated over three hours after Juror S. formed that belief, and each juror was polled after the defense verdict was returned. As to the second point, Juror S. did not at any point during voir dire, trial, jury deliberations, or the post-verdict polling, advise the trial court that the stress of jury deliberations or his hypertension might place him at risk. Instead, ten days after the verdict, Juror S. apprised the appellant’s attorney and the trial court of his concern that his blood pressure had ’’gone ballistic” during deliberations. There was no evidence that Juror S. asked for an overnight break in the deliberations or that he consulted a physician after the verdict was returned. The trial court did not abuse its discretion in rejecting these claims as a basis for a new trial.

. At this point, an interview with Juror K. himself might have provided more significant (and direct) evidence regarding Juror S.'s allegations about K.'s alleged consumption of alcohol and the conduct of both of them during trial and deliberations. Counsel for the appellee proposed interviews with three additional jurors. The trial court agreed to permit a further interview with one other juror. Counsel for the appellee then suggested that, if only one more interview was to be permitted, Juror K. ought to be interviewed, but counsel for the appellant suggested that Juror K. would only deny drinking.

. Gamble concerns a case tried in Miami in 1902. An all-male, twelve person jury in a first-degree murder case was sequestered in the "Everglade” hotel several blocks from the then-Dade County courthouse. The jurors slept four to a room, and a lone bailiff struggled to keep an eye on all of them. The jurors "loitered” to say “a few words to some girls who were staying there,” and apparently "procured and had in their rooms at the hotel ten or a dozen bottles of lager beer, a pint and half pint flasks of whiskey and a regular bottle of whiskey during the time of the trial.” The trial court ultimately satisfied itself that the jurors had paid for their own liquor, that they drank "sparingly and moderately,” and that "nothing occurred from it to influence the verdict.” The Supreme Court of Florida, although concerned that the bailiff’s and jurors' conduct "was highly irregular and unbecoming the proper and decorous conduct of the trial of a citizen for his life,” affirmed the trial court's rulings. Id.