FRANK SUMPTER PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. An indictment charging an assault to have been made with "a deadly weapon, to-wit: a firearm commonly known as a musket, which said musket was then and there loaded with gunpowder and leaden shot," sufficiently names the deadly weapon.

2. It is error to charge that the jury would not be justified in disregarding the testimony of a witness successfully impeached if it be corroborated by other evidence which they do believe.

3. A charge that "negative testimony is such testimony as is given negativing certain facts, and is never in law entitled to as much credence as positive testimony," is erroneous as a charge upon the weight of the evidence.

4. A witness having testified that she saw the defendant do the shooting, and exclaimed to him, "Frank, you have done killed Jim," her daughter also present at the shooting was permitted to testify she heard her mother make the exclamation. Held, not hearsay.

This case was decided by Division B.

Writ of error to the Circuit Court for Columbia County.

The facts in the case are stated in the opinion of the Court.

*T. B. Oliver,* for Plaintiff in Error.

*William B. Lamar,* Attorney-General, for the State.

COCKRELL, J.

The plaintiff in error was convicted of an assault with intent to commit murder in the first degree, and to a sentence thereon of five years' imprisonment has prosecuted this writ of error.

The first assignment of error is predicated upon the overruling of his motion to quash the indictment. The brief submits this assignment on the "indictment and the statements of the motion." The only specific objection to the indictment made in the motion is the alleged failure of the indictment to name the deadly weapon with which the assault was made. A sufficient answer to this assignment is found in the indictment itself that charges the assault to have been made with "a deadly weapon, to-wit: a firearm commonly known as a musket, which said musket was then and there loaded with gunpowder and leaden shot." See, also, Gray v. State, 44 Fla. 436, 33 South. Rep. 295.

The second assignment is the denial of the motion for

a new trial. There are seventeen grounds stated in the motion. Several are based on the sufficiency or weight of the evidence, but as the case is reversed on other grounds, we refrain from expressing our views thereon. Such result likewise renders it unnecessary to discuss the refusal of the court to award a new trial on the ground of newly discovered evidence or the irregularity alleged to have occurred in the reception of the verdict during the absence of the accused.

The charge of the court as to the proof required to sustain the defense of an *alibi* was not misleading. Counsel has not argued the point in such sort as to call for extended discussion on our part.

The court erred in charging the jury as follows: "In regard to the impeachment of the testimony of witnesses, the court instructs you that wherever a witness has been successfully impeached you have the right to disregard the testimony in toto if you disbelieve it, but if the testimony is corroborated by other evidence which you do believe, you would not be justified in disregarding it."

In Gantling v. State, 40 Fla. 237, 23 South. Rep. 857, the charge given was: "When you are satisfied that a witness has wilfully sworn falsely to a material matter of fact in the case, then you may disregard the entire evidence of such witness, unless the evidence of such witness is corroborated by circumstances proven, or by the testimony of some other credible witness." In passing on this charge this court said: "The instruction under consideration was calculated to impress the jury with the idea that the law would not permit them to discard (disregard) the entire testimony of such a witness, where he was corroborated by some circumstances or another

credible witness in the case, and it was, therefore, erroneous. Newberry v. State, 26 Fla. 334, 8 South. Rep. 445."

The court erred also in charging as follows: "Negative testimony is such testimony as is given negativing of certain facts, and is never in law entitled to as much credence as positive testimony; that is, one witness may testify as to not having seen a thing when present, while another testifies that he did see it—all of this testimony goes to you for your consideration in this case." The language quoted is an argument to be addressed to the jury, the sole judges of the weight of the testimony, but can not be said to be such a fixed, settled principle of law that it may be given as a charge in those jurisdictions where the judges are confined strictly to questions of law in their instructions. The whole matter of the credibility of witnesses is for the jury. The charge given is subject to the criticism that it does not confine the superiority of the positive over the negative to conditions of equal credibility on the parts of the witnesses testifying, but the objection goes deeper. Judge Thompson in his work on Trials, section 2417, says: "The propriety of giving the jury a caution on this subject in any case is extremely doubtful, since it tends to disturb the operations of their minds in judging of the evidence, and to create impressions that their verdict is not to be returned according to the natural impressions of the truth, derived from the evidence which they have heard, but from the application of artificial rules." See, also, 11 Ency. Pl & Pr .344, and 1 Whart. Law of Ev. Section 415, et seq.

The charges requested by the accused were sufficiently covered by the general charge given by the court, and the action of the court in refusing them will not be disturbed.

But one more point calls for consideration. The wife of the man who had been shot had testified that she was present at the shooting, saw the accused do the shooting and exclaimed to him: "Frank, you have done killed Jim." Subsequently her daughter testified she was present at the time and while she did not see who did the shooting, she heard her mother's exclamation. The defense objected to this testimony on the ground that it was hearsay. If her mother's testimony is to be believed it was not hearsay, but uttered in the presence of the accused.

For the errors in the charge of the court, the judgment is reversed and a new trial awarded.