TOMAS SALON, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion filed Jan. 6, 1915.

Where an information contains five counts, the legal effect of a verdict finding the defendant guilty as charged in the fifth count is to acquit him of the offense charged in the other counts, and where the evidence adduced is insufficient to support the verdict found, the judgment will be reversed and a new trial awarded.

Writ of Error to Criminal Court of Record, Hillsborough County.

Judgment reversed.

*Martin Caraballo,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

SHACKLEFORD, J.—Tomas Salon was convicted upon the fifth count of an information, which reads as follows:

"AND BE IT FURTHER REMEMBERED, That Wm. H. Jackson, Solicitor as aforesaid, prosecuting as aforesaid, being present in said court on the day and year first aforesaid, gives the court to be further informed and understand that the said Tomas Salon, late of the County of Hillsborough aforesaid, in the State aforesaid, on the 26th day of January, in the year of Our Lord one thousand nine hundred and fifteen, with force and arms at and in the County of Hillsborough aforesaid, did unlawfully and feloniously have in his possession a list and schedule of lottery prizes, gifts and drawings, against the forms of the statute in such cases made and provided and to the evil example of all others in the like case offending, and against the peace and dignity of the State of Florida."

The defendant was sentenced to pay a fine of $500.00 and costs, or in default thereof to be confined in the county jail for the period of one year, and seeks relief here by writ of error.

The first witness introduced on behalf of the State was W. W. Woodward, who testified as follows: "My name is W. W. Woodward. I am a deputy sheriff of Hillsborough County, Florida. I know Tomas Salon, the defendant. On the 26th day of January, 1915, I went into a saloon operated by Maximo Gonzalez on 7th Avenue and 15th Street in the City of Tampa, Hillsborough County, Florida, and in a room partitioned off in said saloon I found the defendant, Tomas Salon, sitting at a desk with a book in his hand. There was another man standing in that room. I grabbed the book to take it away from Salon and he refused to turn it

aloose until I told him I was an officer, then he gave me the book. I also found on his desk a square piece of card board with numbers from one to one hundred, and in the right hand top drawer of his desk I found about $45.00. He appeared not to understand what I said and when I placed my hand on his shoulder arresting him Mr. Gonzalez, the proprietor of the saloon, came in and said to me in English, 'what is the matter?' I asked Gonzalez what kind of a game is this and he said this is a bolita game. How much bond do you want. I will give the bond."

Whereupon counsel for the defendant moved the Court to strike the answer of the witness as to statements made by Maximo Gonzalez in the English language inasmuch as witness had testified that Salon, the defendant, appeared not to understand English, which said motion was overruled by the court, and to which ruling the defendant by counsel did then and there except.

The examination of the witness then proceeded as follows: "While I was in there a boy came in and laid fifty cents on the table and I said, What do you want? He said, Give me a ticket for Clara. I do not now remember the number he called for. He said to Salon, 'You know Clara.' At that time the other man in the room made some kind of a sign to the boy and he stopped."

Whereupon counsel for the defendant moved the court to strike the testimony of the witness as to any statements made by said boy to Mr. Woodward in English, inasmuch as the evidence shows that Mr. Salon, the defendant, did not understand the English language, which motion was overruled by the court and the defendant did then and there except.

The witness then testified, "I do not know what these

little papers are. A large number of them are blank—two or three have some names written on them. I do not know what this book is nor do I know what this card is." Whereupon a number of small pieces of paper, two with names of some persons, the others blank, a square piece of card board with numbers from one to one hundred and a small book containing names were offered in evidence by the solicitor and ordered filed in evidence. "These papers have been in my possession and in possession of the sheriff ever since the arrest until today."

The writer is of the opinion that the statements made by Maximo Gonzalez and also by a boy in the presence of the defendant, as testified to by W. W. Woodward, were not properly admissible against the defendant and that the motions to strike out the same should have been granted. All of these statements were made in the English language, and according to the testimony of Woodward the defendant "appeared not to understand" what was said. As is said in 2 Wharton's Criminal Evidence (10th ed.) Section 680: "To give to silence the effect of an admission, the party charged must have been in a position to explain. Before acquiescence in the language or conduct of others can be assumed as a concession of the truth of any particular statement, or of the existence of any particular fact, it must plainly appear that the language was heard and the conduct understood.

"The doctrine, then, of acquiescence by silence or conduct, is subject to the following limitations:

"First, such accusations or statements, in the presence of accused, are competent only when the accused hears them and fully comprehends their effect, and this means not merely in his bodily presence, but in his hearing and understanding. He must understand that he himself is

accused of the criminal act, and it must be shown beyond a reasonable doubt that the language was heard or the conduct understood by the accused. Thus, when a person is asleep, or so intoxicated as to be unable to comprehend, or deaf, or did not understand the language spoken, he cannot be prejudiced by statements or accusations made in his presence."

Also see especially Territory v. Big Knot on Head, 6 Mont. 242, 11 Pac. Rep. 670, and People v. Izzo, 14 N. Y. Supp. 906. If the defendant did not speak or understand the English language, as apparently he did not, then the statements made by Gonzalez and the boy were clearly inadmissible. Also see our discussion in Weightnovel v. State, 46 Fla. 1, 35 South. Rep. 856, and Mumford v. State, decided here at the present term. We also refer to the following authorities: Commonwealth v. Kenney, 12 Metc. (Mass.) 235, 46 Amer. Dec. 672; State v. Burton, 94 N. C. 947; People v. Koerner, 154 N. Y. 355, 48 N. E. Rep. 730; State v. Epstein, 25 R. I. 131, 55 Atl. Rep. 204; People v. Conrad, 200 N. Y. 356, 93 N. E. Rep. 943; Hanger v. United States, 97 C. C. A. 372, 173 Fed. Rep. 54.

The only other witness introduced by the State was Arthur Brooks, who testified as follows:

"My name is Arthur Brooks. I am a deputy sheriff of Hillsborough county, Florida. Q. Please examine these small pieces of paper, this board with numbers and this book and state if you know what they are? A. These papers are little pieces of paper, this board is a board containing numbers from one to one hundred and this book is a small book, has some names written on it. I cannot tell whether these tickets are bolita tickets or not. I have arrested one person for running bolita games,

but the list of numbers that I have seen is printed on a long paper and not on a square board like this. This book merely contains names of people. I cannot say that any of these papers, board or books are bolita books or papers. Q. Please state if you know how a bolita game is run? A. Well, I havn't seen a game run for many years but it used to be run year ago in this way, the man who runs the game sells tickets, sometimes printed, sometimes with a rubber stamp and sometimes in writing with numbers from one to one hundred. And any person can buy a whole number, it usually sells for one dollar, or can buy any fractional part from ten cents and up. When the numbers are all sold one hundred balls numbered from one to one hundred are placed in a bag. The bag is shaken up and some person grabs a ball from the outside and a string is tied around that ball to separate it from the others, the bag is then cut where this ball is tied or all of the other balls are taken out and the ball that has been tied is taken out and whoever holds the number that is printed on that ball gets $90.00 and the other $10.00 is the portion that the man who runs the game gets. Sometimes bolita is run without selling tickets but numbers would be sold and names of the purchasers, the number and the amount purchased recorded in a book something like this book. As a rule the kind that numbers from one to one hundred is used to keep tab on the numbers that are sold and those that remain unsold but the cards that I have seen are long and not square like this."

Here the State rested and the defendant then testified in his own behalf. We are of the opinion that the evidence adduced is insufficient to sustain the verdict found and that the motion for a new trial upon such

grounds should have been granted. The information obviously was based upon Section 3582 of the General Statutes of Florida, and by finding the defendant guilty under the fifth count of the information such verdict operated as an acquittal of the defendant under the other counts. Smith v. State, 45 Fla. 203, 23 South. Rep. 854, and Johnson v. State, 58 Fla. 68, 50 South. Rep. 529.

Judgment reversed.

TAYLOR, C. J. and WHITFIELD and ELLIS, JJ. concur.

COCKRELL, J., absent by reason of sickness.