JOHNNIE WILLIAMSON, *Plaintiff in Error,* v. THE STATE OE FLORIDA, *Defendant in Error.*

Opinion Filed February 23, 1923.

1. In a prosecution for a homicide by shooting the admission of testimony of a witness as to a conversation between the defendant and the person shot on the day after the fatal shooting in which conversation the mortally wounded person indicated resentment towards the defendant and also that he thought the shooting was unnecessary, was error, the statements by the decedent not being a part of the *res gestae* and not dying declarations; and such error was necessarily prejudicial to the defendant.

2. The mere separation of jurors, empanelled to try a capital case, from their fellows, without the attendance of an officer, although an irregularity, is not a sufficient cause for setting aside the verdict, if the court is satisfied that the prisoner has not sustained any injury from such separation. But where

there has been an improper separation during such trial, if the verdict is against the prisoner, he is entitled to the benefit of a presumption that the irregularity has been prejudicial to him, and the burden of proof is upon the prosecution to show to the entire satisfaction of the court that the prisoner has suffered no injury by reason of the separation.

A Writ of Error to the Circuit Court for Columbia County; M. F. Horne, Judge.

Judgment reversed.

*J. B. Hodges* and *Guy Gillen*, for Plaintiff in Error;

*Rivers Buford*, Attorney General, and *J. B. Gaines*, Assistant, for the State.

WHITFIELD, J.—Upon an indictment charging murder in the first degree Williamson was convicted of manslaughter and took writ of error.

The person who was fatally shot by the accused lived some weeks after being wounded. At the trial, a witness for the State testified that he was present the day after the shooting in a room where the wounded man was lying in bed and the witness was then asked: "What happened there?" The court over objections that it was no part of the *res gestae* and irrelevant and immaterial, permitted the witness to testify that the day after the shooting of the decedent, Clyde Hoyt, the accused, John Williamson, went in the room where Clyde Hoyt was lying wounded and said: "Clyde you know that I had to do it, don't you?" and that "Clyde said, no you did not have to do it, and John tried to shake hands with Clyde and Clyde would not let him and told him to turn his hand loose."

What the decedent, Clyde Hoyt, said to the accused the day after the shooting was not a part of the *res gestae,* Clyde Hoyt was not under oath, and what he said was not a dying declaration but a voluntary statement of his view of the tragedy. It was not proper evidence on the issue that was to be determined by the jury, and was calculated to influence the jury to the prejudice of the accused. It was erroneously admitted in evidence and was harmful.

The record proper shows that at the trial, the court made the following order: "The taking of evidence was begun and pending the taking of evidence the court charged the jury as to their conduct and demeanor and ordered said jury not to separate but to remain together and placed said jury in charge of C. C. Berthea and E. N. Richards, sworn bailiffs, and ordered said jury to be present in the jury box, in charge of their bailiffs at nine o'clock Tuesday morning, May 2nd, 1922. The sheriff was ordered by the court to provide the jury with meals, lodging and necessary comforts." See Sec. 2789, Rev. Gen. Stats. 1920.

On a motion for new trial it was shown that the jurors violated the order of the court that they should "not separate but remain together," in that several of the jurors on two occasions, apparently without the consent or knowledge of the court or of the defendant's counsel left the other jurors and with a sworn bailiff went to store their automobiles for safety while they were on jury duty in the case; and that several of the jurors with a bailiff and with the consent of the trial judge, but without the knowledge or consent of the defendant or his counsel, went several miles to the home of one of the jurors on an apparently proper mission and returned promptly to their places with the other jurors.

The mere separation of jurors, empanelled to try a capital case, from their fellows, without the attendance of an officer, although an irregularity, is not a sufficient cause for setting aside the verdict, if the court is satisfied that the prisoner has not sustained any injury from such separation. But where there has been an improper separation during such trial, if the verdict is against the prisoner, he is entitled to the benefit of a presumption that the irregularity has been prejudicial to him, and the burden of proof is upon the prosecution to show to the entire satisfaction of the court that the prisoner has suffered no injury by reason of the separation (contrary dicta in State v. Madoil, 12 Fla. 151, disapproved). Gamble v. State, 44 Fla. 429, 33 South. Rep. 471.

The State undertook to show by testimony of the two bailiffs and several jurors that there was no misconduct by the jurors or by anyone with reference to the jurors while the jurors were separated, and the court adjudicated that "there was no misconduct on the part of the jury, nor evidence of any misbehavior on their part." Gamble v. State *supra;* Bird v. State, 18 Fla. 493. See also State v. Cotts, 49 W. Va. 615, 39 S. E. Rep. 605, 55 L. R. A. 176; Armstrong v. State, 2 Okl. Cr. 567, 103 Pac. Rep. 658, 24 L. R. A. (N. S.) 776; 16 C. J. 1077; 20 R. C. L. 249; Gamble v. State, 44 Fla. 429, 32 South. Rep. 471, 103 Am. St. Rep. 150, 60 L. R. A. 547.

The order that the jurors should "not separate but remain together," was made in open court and the defendant who was being tried for a capital offense, had a right to assume that the order would be obeyed. Otherwise he could have asked the court to make appropriate orders with reference to the jury while the case was being tried. The jurors did in fact separate, not for very brief periods

for comfort or for emergencies, but for considerable periods of time and for greater or less distances, in violation of the court's order, upon the strict observance of which order the defendant had a right to rely; and the fact that the defendant was found guilty of manslaughter and not murder, would not deprive him of his rights under judicial orders made in the case for his protection during a trial which might have resulted in a conviction of a capital crime. But as the express finding of the trial court on testimony taken that there was no misconduct on the part of the jury, is justified by the record, and no injury to the accused appearing from the separation of the jury, the judgment will not be reversed because of the separation of the jury as shown in this case. Bird v. State, 18 Fla. 493, 1 Ann. Cas. 285.

Other errors assigned and argued if material may not appear in another trial. Assignments as to charges are not well taken. A new trial should have been granted because of the admission in evidence of the quoted conversation and intercourse between the decedent and the accused the day after the decedent was shot by the defendant.

Reversed for a new trial.

TAYLOR, C. J., AND ELLIS, BROWNE AND WEST, J. J., concur.