ERNEST HANDLEY v. STATE.

170.So. 748.
Division B.
Opinion Filed July 22, 1936.
On Rehearing November 24, 1936.

*Davis & Davis,* for Plaintff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant Attorney General, for the State.

BUFORD, J.—The writ of error is to review a judgment of conviction of manslaughter under an indictment charging murder in the first degree.

The plaintiff in error in the brief filed in this case presents ten questions for our determination. The first question is:

"Where it appears in evidence that the deceased was shot around one o'clock in the morning and the sheriff, upon being notified between 2:30 and 3:00 o'clock, went to the scene of the shooting, about nineteen miles away, as soon as he could get dressed, and upon arriving there, was told by the defendant that the deceased tried to shoot him, the defendant, and he, the defendant, beat him to it, or words to that effect, and almost immediately thereafter, in the absence of testimony showing that deceased was in a dying condition or that death was impending, and he, in point of fact, did not die for about two weeks, the deceased made statements to the sheriff which were not shown to have been heard by the defendant, but it is alleged the defendant was near enough to have heard, and such statements were of a prejudicial nature, and calculated to influence the minds of the jury to the injury of the defendant, should such statements have been admitted in evidence over objection of the defendant?"

If there was any error in admitting the testimony referred to in this question it was cured by the verdict because the testimony which is challenged by the question tended to prove felonious intent, if it tended to prove anything at all. Aside from this, the record shows that the defendant was close enough to have heard the statements made by the deceased at the time they were made and which are referred to in this question.

We think the record shows the statements were made in the presence of the defendant and, therefore, no error is made to appear.

The second question is:

"Where the witness testifies that he heard a conversation between the defendant and a third party some little time after the shooting and the question is asked, 'What was that conversation,' the defendant reserving the right to move to strike the answer, and he answered, 'Handley asked him was he dead yet and he said, 'No but he is dying and will soon be dead.' And Handley said, 'Let me see how many times I shot' and he reached in his belt, and pulled out his pistol and looked at it and said, 'I shot five times.' Then Handley said, 'They ought to have known better than to mess with me, I don't miss them.' And he held up his fingers and said, 'that is two to my credit.' 'If I die tonight I can say that I got two of them.'

"Yes, sir,' he said, 'If I die tonight, that is two to my credit.' ", should the court have stricken such answer upon motion of defendants?"

All that the evidence challenged by this question tended to prove was that defendant shot the deceased and shot with the intent to strike the deceased. It might be said that this was cumulative evidence but it was certainly admissible as evidence tending to show that the defendant shot the deceased.

The third question presented is:

"Where it appears in evidence that the sister of Sledge who was the wife of his deputy, Arndt, arrived at the scene of the tragedy three or four hours after the shooting and had a conversation with Sledge, not in the presence of the defendant, should she have been allowed to testify over the objections of the defendant that Sledge told her

that he was going to die, that he would never live to get to the hospital and that 'He had not done anything to Ernest Handley to cause him to shoot him down,' or words to that effect?"

There was an objection to the question as follows: "What was the conversation between you and him as to whether or not he would die?" The Court overruled that objection. When the witness answered the question she said: "He said, 'I am going to die,' and I said, "How do you know?" and he said, 'I am paralyzed all over, I cannot live. I am going to die.' And I said 'No, you are not ging to die, we are going to get you to the hospital' and he said 'I will never live to get there.' At that time he told me that he had not done anything to Ernest Handley to cause him to shoot him down, or words to that effect."

There was no motion to strike the answer or that part of the answer which was not responsive to the question. Therefore, the plaintiff in error is not in position to take advantage of error if there was any in the failure of the court to strike the unsolicited part of the answer, to-wit: "At that time he told me that he had not done anything to Ernest Handley to cause him to shoot him down, or words to that effect," which was the only part of the answer not properly admitted in evidence.

The fourth question is as follows:

"Where it appeared that the wife of Sledge saw him at the hospital about 5:00 o'clock in the afternoon after the shooting and he had a conversation with her and demonstrated the manner in which the shots were fired, should she have been permitted, over the objections of defendant, to demonstrate to the jury the manner in which those shots were fired?"

We think that the admission of this testimony was error, but, when taken in connection with the entire record, we do not think that its admission could have worked any injury to the defendant. The testimony admitted over objection was given by Mrs. Sledge, the wife of the deceased. She testified that her husband, after reaching the hospital and at a time when he said that he was going to die demonstrated to her the manner in which the shots were fired which took effect in his body. The question was, "Did Mr. Sledge demonstrate to you the manner in which those shots were fired?" Objection was made upon the ground that the testimony elicited was hearsay; that no proper predicate had been laid as a foundation for the admission of such statement and that it is but a narrative of the past. The objections were rather vague and indefinite but the question elicited hearsay testimony. It was not shown to have been admissible as a dying declaration but the answer was such that its admission does not appear to us to have probably been harmful. The answer was: "He said that they were shot just like that, and he snapped his fingers 5 times as fast as he could."

So, we hold the error thus committed to have been harmless. Section 2812 R. G. S., 4499 C. G. L.; Osteen v. State, 92 Fla. 1062, 111 Sou. 725; Henderson v. State, 94 Fla. 318, 113 Sou. 689.

The fifth question is as follows:

"Should the court, upon request of defendant, have charged the jury that the presumption of innocence 'attends and abides with him (the defendant) at every step and in every stage in the case; that the fact or not that he is indicted for this offense is not indication of his guilt, for to charge an offense is one thing and to prove it is another' and that 'if the evidence or lack of evidence to your minds

engenders a reasonable doubt as to the proof of any one or more of the material allegations of the indictment, then you cannot convict the defendant, but should return a verdict of 'not guilty'?"

The charge was properly refused because it did not correctly state the law. That part of the charge reading, "If the evidence or lack of evidence to your minds engenders a reasonable doubt as to the proof of any one or more of the material allegations of the indictment, then you cannot convict the defendant but should return a verdict of not guilty," is fatally defective because, while the evidence might fail to prove elements of murder in the first degree as alleged in the indictment it might amply prove some other degree of unlawful homicide and in such event the defendant would not be entitled to a verdict of not guilty.

The sixth, seventh and eighth questions are predicated on the assumption that the charge referred to in the fifth question was proper to be given and that the charges given by the court were inadequate and insufficient when considered with the fact that the requested charge was refused. We have carefully considered the charge of the court as given and find that it was entirely sufficient to give the defendant the benefit of all his legal rights in the premises.

The ninth question is as follows:

"Where the state attorney, in the trial of the case, while in the presence of the jury without cause, makes an issue between the defendant and himself, and pursues the matter in his argument to the jury in a manner to divert the minds of the jury from the issues in the case, should the court grant defendant motion for a new trial where the motion contains such a ground and is supported by affidavits?"

It appears from the transcript of the record that at the close of the testimony of the State the defendant moved

the court to call as a court's witness one C. J. English. The record shows that a motion was made and thereupon the court called English as a court witness. The record does not show any statement at that time made by the state's attorney nor any objection made to anything said by the state's attorney nor any ruling of the court in regard thereto or any exception noted.

In motion for new trial the seventeenth ground is in the following language:

"Because of a prejudicial statement of the State's Attorney, the Hon. J. R. Kelley, in the presence of the jury upon the making of a motion by the defendant that the court call as a court's witness one C. J. English, the particulars of said statement being set out in the affidavit hereto attached. and made a part hereof."

In support of this ground to the motion the defendant made affidavit in which he averred:

"Immediately after the presentation of a motion of the defendant by his attorneys, that the court call one C. J. English as a Court's witness, the States Attorney arose in an excited manner and stated that he resisted the motion and wanted to file an answer thereto and take evidence; that there were statements made in the motion that were not true and the facts were distorted and that he wanted to take testimony, all of which happened in the presence of the jury, and, as affiant believes, to his prejudice; that these statements were reiterated by the States Attorney, even while attorneys for affiant were objecting; that it was argued by the States attorney in his closing argument to the jury that the affiants attorneys had placed him, the States attorney, on trial, which argument may have caused the jury to conclude that he referred to the above incident;

that this affidavit is made for the purpose of supporting a motion for a new trial, and is made a part thereof."

We assume from the face of the record that the motion that the court call the witness English as a court witness was made in the presence of the jury and that whatever reply to that motion may have been made by the State's Attorney was likewise made in the presence of the jury, but the record fails to show, as heretofore stated, that any objection was made at the time or that any exceptions were noted in connection therewith.

In the case of Jenkins, *et al.,* v. State, 35 Fla. 737, 18 Sou. 182, it was held:

"Comments of counsel in arguing a case before a jury are controllable in the discretion of the trial court, but this discretion is subject to review, and when counsel indulge in material statements outside of the evidence, and which are likely to do the accused injury it will be deemed an abuse of discretion when not stopped by the court on objection made. Such objection should be made at the time of abuse of the privilege of argument, and the action of the court overruling the objection, and the fact that exception was taken to such ruling should appear with the objection in the bill of exceptions."

This has been followed in Danford v. State, 53 Fla. 4, 43 Sou. 593, and in McCall v. State, 120 Fla. 707, 163 Sou. 38.

The matter complained of in this case, however, did not occur in the argument of the State's Attorney to the jury, but, assuming that it did occur, as was alleged in the motion for new trial, it occurred in an argument addressed to the Court when the Court had under consideration the motion of the defendant to call a witness as a court witness and

was in regard to a matter as to which the jury had no right of determination.

Therefore, we hold that error is not made to appear by the record in this regard.

The tenth question challenges the sufficiency of the evidence to sustain the verdict. We find the evidence amply sufficient to sustain the verdict.

Finding no reversible error in the record, the judgment should be affirmed and it is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN, J., concur in the opinion and judgment.

DAVIS, J., dissents.

DAVIS, J. (dissenting).—If the consideration of this writ of error were confined altogether to the sufficiency of the evidence to sustain the verdict, I would concur in affirming the judgment appealed from because I think the evidence entirely sufficient to demonstrate the fact that Handley unnecessarily killed Sledge and therefore did it feloniously under circumstances that do not render the killing justifiable or excusable homicide. Section 7141 C. G. L. 5039 R. G. S.

But convictions should not be sustained unless arrived at according to the settled law of the land.

In this case there was admitted in evidence over plaintiff in error's protest and exception, proof of statements alleged to have been made by the deceased to the sheriff under circumstances where it was not established that these statements so made were admissible as dying declarations, nor established that they were actually known to or heard by the defendant. The sole ground for admitting them in evidence at all is the state's contention that such hearsay state-

ments were made while defendant was near enough to hear them had he been listening. Other evidence of similar statements alleged to have been made by Sledge (the deceased) not established to be admissible as true dying declarations were likewise admitted over protest of the defendant.

Evidence, oral or written, is called hearsay and is inadmissible when its probative force or effect depends in whole or in part upon the competency and credibility of some person other than the witness by whom it is sought to produce it. *Hearsay* evidence is that which is not given by the witness as lying within his own knowledge, but as derived from other sources and dependent upon the truthfulness of such other sources for its credibility.

Where a declaration is made by one who has been mortally wounded, but such declaration is not a product of and a part of the difficulty itself, but is a declaration which relates to a retrospective narration of what has previously occurred between the declarant and the defendant, such declaration is not a part of the *res gestae,* nor can it be received in evidence on the theory that it is admissible as such. Thus it is said in Vickery v. State, 50 Fla. 114, 38 Sou. Rep. 907, that:

"Statements made by the deceased four, five or ten minutes after a fatal shooting as to who shot him and whether or not the defendant shot him, are not a part of the *res gestae* when it is not shown what transpired between the shooting and the time stated so as to make it clear that the supervening circumstances, including the statements inquired about, were all the product of and a part of the difficulty itself." Second headnote.

No predicate for admitting what Sledge said to the Sheriff

as part of the *res gestae* was laid, nor attempted to be laid, by the State in this case.

On the contrary, the theory of the majority of this Court in denying defendant's objection to their admissibility seems to be the theory that, although such declarations of Sledge were not proven as dying declarations, yet they were nevertheless admissible as an exception to the hearsay rule under the doctrine of admitting them as quasi-confessions (as they are sometimes called) because allegedly made in defendant's presence in accusatory form so that when undenied at the time, they constitute a circumstance tending to establish guilt by implied admission because the accused failed to deny them when made. For the rule permitting such declarations to be admitted as an exception to the hearsay rule see: 2 Wharton's Criminal Evidence (10th Ed.) Sec. 680; Underhill's Criminal Ev. (3rd. Ed.) Sec. 208; Jackson v. State, 167 Ala. 44, 52 Sou. Rep. 835; Williamson v. State, 85 Fla. 188, 95 Sou. Rep. 569.

But before a so-called quasi-confession in the form of an undenied accusatory statement made in accused's presence can be legally received in evidence as an exception to the hearsay rule, it is indispensable that such accusatory statement must be shown to have been heard by him and actually came to the defendant's knowledge in that fashion, —not merely that it was made in his presence or perhaps near enough to him to have been heard by him had he been listening at the time. Thus in Salon v. State, 70 Fla. 622, 70 Sou. Rep. 603, it is said:

"To give to silence the effect of an admission the party charged must have been in a position to explain. Before acquiescence in the language or conduct of others can be assumed as a concession of the truth of any particular statement, or of the existence of any particular fact, it must

plainly appear that the language was heard and the conduct understood. The doctrine then of acquiescence by silence or conduct is subject to the following limitations: First, such accusations or statements, in the presence of accused, are competent only when the accused hears them and fully comprehends their effect, and this means not merely in his bodily presence, but in his hearing and understanding. He must understand that he himself is accused of the criminal act, and it must be shown beyond a reasonable doubt that the language was heard or the conduct understood by the accused. Thus, when a person is asleep, or so intoxicated as to be unable to comprehend, or deaf, or did not understand the language spoken, he cannot be prejudiced by statements or accusations made in his presence."

In this case the court permitted testimony to be given of a declaration by deceased that violates the hearsay rule in that it was not shown to have been a properly established dying declaration, and cannot be sustained as an accusatory statement made in the defendant's presence, because not shown to have been actually heard by him so as to give him an opportunity to deny it when made, as required in the Salon case, *supra*.

I think a new trial should be granted with directions to reject the challenged testimony referred to in ground 14 of the motion for a new trial. The proof utterly fails to support the admission of such testimony as proof of a dying declaration. And indeed the majority of this court so finds and attempts to cure the difficulty by bringing the proof under the "accusatory statements" rule in order to save a reversal.

Where such materially damaging evidence as was offered in this case is improperly admitted over appropriate objection, the harmless error statute cannot be said to have any

application, since that statute is predicated upon the *theorem* that judgments should not be reversed for *merely* inconsequential departures from established rules of practice.

It was never intended to invite the trial judges of this state to speculate upon the probable harmless effect of erroneous procedure as being non reversible and thereupon countenance the admission of illegal evidence in criminal trials so long as he may feel confident that the general merits of the particular prosecution will impel an appellate court to affirm a conviction on the evidence alone, regardless of whether the trial was properly conducted or not.

## On Rehearing.

Buford, J.—This case comes on for further consideration after rehearing granted pursuant to opinion filed herein July 22, 1936.

The questions which we review require a determination of what may be admitted in evidence as an accusatory statement in the presence of the accused and what may be admitted in evidence as a dying declaration.

It appears to be well settled that "in order that silence may be received as admission it must be shown either that accused did in fact hear what was said, or that he was in a position to hear. Whether in any case accused heard the charge is a question of fact, unless it is shown positively that he was within hearing distance and there is no evidence that his hearing was impaired." 16 C. J. 632.

Of course, this rule may be considerably modified by the further requirement that the statement must have been made in a tone loud enough to have been heard by the accused and in the language understood by the accused and while the accused was in the possession of his faculties, that is, was not asleep or unconscious. And, in any event, it

must be shown that the statement was not denied by the accused.

In Roberts v. State, 94 Fla. 149, 113 Sou. 726, Mr. Chief Justice Ellis, speaking for the Court, quoted a charge complained of as follows:

"Where someone in the presence of the accused makes a declaration involving or implying his guilt, and there is opportunity for a reply and the surroundings and persons are such as render a denial or explanation ordinarily expedient and proper, yet he remains silent, such conduct and silence may be considered as an admission on his part, so

" 'If you find from the evidence that the defendant was charged with shooting William A. Stone and made no denial of such charge then under the law an admission on part of the accused may be implied by you gentlemen of the jury from the fact of acquiescence of the defendant in such incriminating charge or statement, but in order for such silence or acquiescence on part of defendant to be an admission of the truth of such charge made against him you must believe from the evidence that the truth or falsity of the charge made was in the knowledge of the defendant, and that such charge was made in his hearing, and in a language which he would understand, and tended to implicate him directly or indirectly; you must also find that the defendant could have, if he so desired, denied such charge with propriety at the time and occasion when made; and if you do so find from the evidence in the case at bar and that the defendant was charged with shooting William A. Stone in the presence and hearing of the defendant and did not deny said charge under the facts and in the circumstances as stated in this instruction, you are at liberty to consider the charge or statement made as having been at the time and place when uttered adopted by the defendant, and may

be considered as competent evidence against him as an indication of guilt.' "

Referring to this charge in the opinion it is said: "The circumstances under which the identification was made rendered it admissible to be given such weight as the jury may have under proper charges by the court considered it entitled to as an indication of the defendant's guilt. See 2 Wharton's Criminal Evidence (10 Ed.), Section 680; 1 Ency. of Evidence, p. 367."

In Autrey v. State, 94 Fla. 229, 114 Sou. 244, Mr. Justice Strum stated the rule to be:

"Where, on being accused of crime, with full liberty to speak, one remains silent, his failure to reply or to deny is relevant as tending to show his guilt; and the accusatory or incriminating statement is admissible, not as evidence of the truth of the fact stated, but to show accused's admission by silence. Silence alone, however, raises no legal presumption of guilt. Its effect is for the jury, and from it, in connection with other facts and circumstances, they may infer that accused is guilty. The probative force of this kind of evidence is not great, and it is to be received with caution. * * * For the silence of accused to be competent evidence against him, or at least to be entitled to weight, as an admission of the truthfulness of the statements of others made to him or in his presence, the circumstances and statement must have been such as naturally and reasonably to call for a reply by him; and it also must appear affirmatively that he had an opportunity or right under the circumstances of the case to deny the truthfulness of the charges made against him."

And said:

"The rule just stated, and its exceptions, have been approved in effect by this court. See Mumford v. State, 70

Fla. 424, 70 South. Rep. 399; Salon v. State, 70 Fla. 622, 70 South. Rep. 603, Sumpter v. State, 45 Fla. 106, 33 South. Rep. 981. See also Vaughn v. State (Ala.) 30 South. Rep. 669; Jackson v. State (Ala.), 52 South Rep. 835; People v. Amaya, 66 Pac. Rep. 794; State v. Lovell, 138 South. W. Rep. 523; 16 C. J. 631 (1256), and cases cited. Of course, the prompt denial by the accused of such accusatory statement destroys entirely the ground for admitting it. See Mumford v. State, *supra*. Likewise when the accused is restrained from making a denial by fear or other sufficient cause, or refrains upon advice of counsel no inference or assent can be drawn from such a silence, and the testimony thereof is admissible."

So, we hold that the rule as above stated in 16 C. J. has been uniformly applied in this jurisdiction.

Statements of the deceased made after receiving a mortal wound may be admitted in evidence as dying declarations. The admissibility of such statements as evidence of this character does not depend upon the length or interval of time between the declaration and the death, but the state of the declarant's mind and his belief that he is in a dying condition. It is not enough that the statement be made when the declarant is *in extremis*. It is also essential that it be made when he has abandoned all hope of recovery from the injury inflicted by accused and is under the firm conviction that his death is inevitable and near at hand. See 30 C. J. 254, *et seq*. A dying declaration made under such circumstances as to be admitted in evidence will not be rendered incompetent by subsequent temporary revival of the mortally wounded person.

Where several declarations are made at different times each of which would be admissible as a dying declaration,

either one, or all, may be admitted. See 30 C. J. 258; Morrison v. State, 42 Fla. 149, 28 Sou. 97.

The admissibility of an accusatory statement made in the presence of the defendant is a primary question of law to be determined by the Court, as is also the question of the admissibility of evidence offered as a dying declaration, and in either case it is the duty of the court to judicially determine the admissibility of the evidence before it is submitted to the jury. See Roten, *et al.,* v. State, 31 Fla. 514, 12 Sou. 910.

In the case of Johnson v. State, 113 Fla. 461, 152 Sou. 176, Mr. Chief Justice Davis, speaking for the Court, said:

"Whether a sufficient and proper predicate has been laid for the admission in evidence of a dying declaration, is a primary matter for determination by the trial court, being a mixed question of law and fact, and the judgment of the trial court thereon is entitled to great weight, every presumption being in favor of its correctness. Such ruling is subject to appellate review, but it will not be disturbed unless it clearly appears to be erroneous. That declarant at the time of his dying declaration, entertained no hope of recovery, and that he knew and appreciated his condition as being that of an approach to certain and imminent death may be gathered from proof of the surrounding circumstances, as well as from all the circumstances of the case. It is not indispensable that deceased declare *totidem verbis* that he entertains no hope whatever of recovery, and realizes that death is imminent and unavoidable, where the understood nature of his injury is such as to establish beyond all reasonable doubt that declarant must have known and believed he was talking as a man on the threshold of mortal dissolution. Sealy v. State, 89 Fla. 439, 105 Sou. Rep. 137; Richardson v. State, 80 Fla. 634, 86 Sou. Rep. 619; Gardner

v. State, 55 Fla. 25, 45 Sou. Rep. 1028; Bennett v. State, 66 Fla. 369, 63 Sou. Rep. 842; Folks v. State, 85 Fla. 238, 95 Sou. Rep. 619; Copeland v. State, 58 Fla. 26, 50 Sou. Rep. 621; Malone v. State, 72 Fla. 28, 72 Sou. Rep. 415."

See also the following cases:

"Folks v. State, 85 Fla. 238, 95 So. 619; Gardner v. State, 55 Fla. 25, 45 So. 1028; Kirkland v. State, 93 Fla. 172, 111 So. 351; Morris v. State, 100 Fla. 850, 130 So. 582; 584; Lester v. State, 37 Fla. 382, 20 So. 232; Lowman v. State, 80 Fla. 18, 85 So. 166; Seely v. State, 89 Fla. 439, 105 So. 137; Frier v. State, 92 Fla. 241, 109 So. 334; Malone v. State, 72 Fla. 28, 72 Sou. 415; Richardson v. State, 80 Fla. 634, 86 So. 619; Copeland v. State, 58 Fla. 26, 50 So. 621."

In Coatney v. State, 61 Fla. 19, 55 Sou. 285, it was held:

"Predicate laid for the introduction of evidence of a dying declaration made on one day cannot be used as a basis for the admission of evidence of another dying declaration made the next day."

Measured by the rules above stated, it appears that the testimony given by G. L. Morrow, Sheriff of Madison County, was properly admitted either as a statement made in the presence of the accused or as a dying declaration.

It is contended by counsel for plaintiff in error that because the plaintiff in error had said to the sheriff just before the deceased made the statement complained of to the sheriff, but not in the presence of the deceased, that deceased attempted to shoot the defendant but he, the defendant, beat him (Sledge, deceased) to it. This involves the first question discussed in the original opinion. We do not think that this meets the rule. It is not sufficient to exclude an accusatory statement made in the presence of the defendant that he should have previously made a statement

contradictory to the accusatory statement, but to make the accusatory statement inadmissible when made in the presence of, in the hearing of and in a manner to be understood by the accused, that the accused should then and there exercise his right in the presence of his accuser to deny the accusation or contradict the statement made which implicates him as one guilty of a crime.

The same condition, however, is not found with reference to the statements made by Mrs. Sledge and Mrs. Arndt and which were admitted in evidence over the objection of the defendant. These statements are discussed in the original opinion.

The record does not show a sufficient preliminary examination and adjudication by the Court as to the admissibility of either the statement of Mrs. Sledge or of Mrs. Arndt as a dying declaration of the deceased. Therefore, neither statement was properly admitted in evidence.

The accused was charged in the indictment upon which he was tried with the offense of murder in the first degree. He was convicted of manslaughter. The verdict when considered in the light of the record shows upon its face that it was a compromise verdict. The State contended that the accused was guilty of murder in the first degree and that the record was sufficient to sustain such verdict. The defendant contended that he acted in lawful self defense and that he was entitled to an acquittal on that ground.

In the original opinion we held that the admission of the testimony given by Mrs. Sledge was error but, with our conception of the record at that time, we held that it was harmless error. We recede from that position because we are not able to say that the jury was not influenced to some extent to bring in a verdict of unlawful homicide by reason of the evidence given at the trial by Mrs. Sledge.

Perhaps a proper predicate could have been laid for the introduction of the statement of Mrs. Arndt and for the statement of Mrs. Sledge as admissible dying declarations of the deceased; but, they were admitted at this trial without the formality of a proper predicate being laid and without an adjudication of the trial court of their admissibility as dying declarations in conformity with the law in this regard.

It follows that the judgment should be reversed and the cause remanded for a new trial.

So ordered.

TERRELL, J., concurs.

BROWN and DAVIS, J. J., concur specially.

WHITFIELD, C. J., and ELLIS, P. J., dissent.

BROWN, J. (concurring specially).—I concur in the foregoing opinion except on the question of the accusatory statement. I hardly think that a sufficient predicate was laid to clearly show that the defendant heard, or was close enough to have heard, the statement made by the deceased to Sheriff Morrow; nor did it clearly appear that any reply was called for, if defendant heard the statement, because defendant had just told Sheriff Morrow, in substance, that he had shot Sledge in self defense.

DAVIS, J., concurs.

ELLIS, P. J. (dissenting).—I adhere to the original opinion affirming the judgment filed July 17, 1936.

WHITFIELD, C. J., concurs.